# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 2299 | **DATE** | 10/25/2010 |
| **CASE TITLE** | Coldwell Banker Real Estate LLC vs. Michael Centanne, et al. | | |

**DOCKET ENTRY TEXT**

This matter is before the Court on Plaintiff Coldwell Banker Real Estate LLC's motion to enforce settlement agreement [31]. For the reasons set forth below, the Court grants Plaintiff's motion [31] to enforce the settlement agreement. At this time, the Court declines to sanction Defendant Centanne for the costs incurred by Plaintiff in bringing the present motion, but cautions Defendant Centanne that further attempts to invalidate the binding settlement agreement entered into by Centanne on July 29, 2010, may result in sanctions. The Court will enter the parties' proposed order for injunctive relief by separate minute entry.

■[ For further details see text below.]

Docketing to mail notices. Notices mailed by Judicial staff.

# STATEMENT

**I. Factual Background**

On April 14, 2010, Plaintiff Coldwell Banker filed a complaint against Defendants Michael Centanne and Stanmeyer Realtors alleging trademark infringement and other causes of action based upon their use of various trademarks, service marks, designs, logos, colors, color patterns, and business methods for use in the promotion of services, products, programs, and marketing, which are owned by Coldwell Banker Real Estate LLC and are on the principal register of the United States Patent and Trademark Office (the "Coldwell Banker marks"). On April 20, 2010, Plaintiff filed a motion for preliminary injunction seeking to enjoin Defendants from further infringing upon the Coldwell Banker marks. Defendants were served with the complaint and the motion for preliminary injunction. Defendants failed to answer or otherwise plead within the proscribed time, and Plaintiff filed a motion for the entry of default on June 7, 2010.

On June 15, 2010, individual Defendant Centanne, in a *pro se* capacity, answered the complaint for himself and attempted to answer for Defendant Stanmeyer Realtors. At the hearing held before this Court on June 15, 2010, and in its subsequent order of the same date, the Court noted that "a corporation may appear in the federal courts only through licensed counsel." *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993). Accordingly, the Court rejected Centanne's answer on behalf of Stanmeyer Realtors and took the motion for entry of default under advisement. The Court gave Defendant Stanmeyer Realtors one month to retain counsel and until July 29, 2010, to answer or otherwise plead, both of which Defendant Stanmeyer failed to do. Instead, on July 20, 2010, Defendant Centanne filed a Motion for a Settlement Conference [25].

On July 29, 2010, the parties appeared before the Court, and, after indicating to the Court on the record that they were close to settling the case, were invited to discuss settlement further in a room provided by the Court. At approximately 10:00 a.m. on July 29, 2010, the parties notified the Court that they had negotiated a settlement. The parties memorialized the settlement in a written settlement agreement, two copies of which were executed by Defendant Centanne and counsel for Plaintiff before a witness, attorney Chance L. Cooper of Gordon & Rees LLP, with each party retaining a copy of the signed agreement. In conjunction with their execution of the settlement agreement, the parties agreed to and executed an agreed order regarding injunctive relief, a copy of which was provided to the Court's deputy on July 29, 2010, when the parties confirmed that the case was resolved. The Court's minute order of July 29, 2010, noted that the parties had reported that they had come to an agreement on the remaining terms and that the Court would review the proposed order. Before the Court had a chance to review the proposed order, on July 30, 2010, Defendant Centanne contacted opposing counsel and the Court's deputy and advised first that he wanted the agreed order filed under seal and later that he was withdrawing his agreement to the proposed order. Based on these representations, the Court set the matter for a status hearing on August 16. The hearing was rescheduled for August 24, 2010.

Prior to the status hearing, on August 4, 2010, Defendant Centanne took action in furtherance of the settlement agreement, including paying for the removal of a "Coldwell Banker Stanmeyer Realtors" canopy at Defendants' place of business. In accordance with the agreement between the parties, Plaintiff provided Defendant Centanne with a check in the amount of $165.00 to reimburse him for the costs incurred in removing the sign.

On August 24, 2010, the parties appeared before the Court regarding the language of the order and any dismissal. At the hearing, Defendant Centanne contested the validity of the settlement agreement and indicated a desire to take the case forward with counterclaims. Plaintiff insisted that a valid settlement agreement existed. The Court gave Plaintiff leave to file a motion to enforce settlement agreement and provided the parties with a briefing schedule on the motion.

## II.     Analysis

A district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it. See *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). Settlement agreements – whether they are oral or written – are contracts, and their construction and enforcement are thus governed by basic contract principles. *Gutta v. Standard Select Trust Insurance Plans,* 530 F.3d 614, 617 (7th Cir. 2008); *Wilson v. Wilson,* 46 F.3d 660, 666 (7th Cir. 1995); *Laserage Tech. Corp. v. Laserage Laboratories Inc.,* 972 F.2d 799, 802 (7th Cir. 1992). In determining whether the parties reached an enforceable agreement, the Court applies state contract law – in this case, that of Illinois. *Dillard v. Starcon International, Inc.,* 483 F.3d 502, 507 (7th Cir. 2007); *Pohl v. United Airlines, Inc.,* 213 F.3d 336, 338 (7th Cir. 2000) ("Issues regarding the formation, construction, and enforceability of a settlement agreement are governed by local contract law.").

In Illinois, ordinary contract construction rules apply to a settlement agreement. *Id*. For a contract to be enforceable in Illinois, "the essential terms of the contract must be definite and certain," and the contract "must include a meeting of the minds or mutual assent as to the terms of the contract." *Quinlan v. Stouffe*, 823 N.E.2d 597, 603 (2005). The interpretation of an agreement is governed by the parties objective expressions of intent. *Hampton v. Ford Motor Co.,* 561 F.3d 709, 714 (7th Cir. 2009). "Secret hopes and wishes count for nothing because the status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves." See *Newkirk v. Village of Steger*, 536 F.3d 771, 774 (7th Cir. 2008) (quoting *Skycom Corp. v. Telestar Corp.*, 813 F.2d 810, 814-15 (7th Cir. 1987). Whether there is "meeting of the minds" turns on an objective appraisal of the parties' conduct, not their subjective beliefs. *Paxton-Buckley-Loda Educ. Ass'n v. Ill. Educ. Labor Relations Bd.,* 710 N.E.2d 538 (Ill. App. Ct. 4th Dist. 1999). We do not

"take a tour through [a party's] cranium, with [the party] as the guide." *Skycom Corp.*, 813 F.2d at 814. In short, it is objective intent that governs, not some subjective theory of meeting of the minds that determines whether contract formation has occurred. *Newkirk,* 536 F.3d at 774.

Although the material terms of the contract must be "definite and certain" so that a court can ascertain the parties' agreement, Illinois courts have consistently held that an agreement may be enforceable even though some terms may be missing or left to be agreed upon by the parties. *Dawson v. General Motors Corporation,* 977 F.2d 369, 374 (7th Cir. 1992); see also *Pritchett v. Asbestos Claims Management Corp.,* 773 N.E.2d 1277 (Ill. App. Ct. 5th Dist. 2002) ("Every feasible contingency that might arise in the future need not be provided for in a contract for the agreement to be enforceable * * * * Ambiguity will prevent the enforcement of a contract only where the ambiguity affects the material terms of the contract.").

Finally, it is important to note that "a mere change of mind is not sufficient grounds for setting aside a settlement agreement." *Porter v. Chicago Bd. of Educ.*, 981 F. Supp. 1129, 1132 (N.D. Ill. 1997) (internal quotations omitted). As the Seventh Circuit has stated, "[a] party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient * * * * If a party to a * * * suit who has previously authorized a settlement changes his mind * * * that party remains bound by the terms of the agreement." *Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 454-55 (7th Cir. 1986) (quotation omitted).

On the morning of July 29, 2010, the parties, before a witness, negotiated a settlement and executed a written settlement agreement in the United States District Court at 219 South Dearborn Street in Chicago, Illinois. As indicated by the handwritten notations on the copy of the settlement agreement submitted to the Court, both Plaintiff and Defendant Centanne contributed to the drafting of the agreement, with its final terms the result of face-to-face negotiation between Defendant Centanne and Plaintiff's counsel. By the Court's reading, the terms of the settlement agreement are unambiguous, and the intent of the parties is definite and clear. Indeed, although the parties had reached a settlement agreement outside the courtroom (albeit in a room furnished by the Court just outside of the courtroom), the parties then appeared before the Court to confirm the existence of the agreement on the record. See *Wilson*, 46 F.3d at 665 (affirming district court's decision to enforce settlement that parties achieved in open court). At no time during the hearing on July 29 – after he had already signed the settlement agreement and provided a copy to the Court – did Defendant Centanne challenge the existence of a settlement, nor did he object to the Court's statement on the record that the parties had reached a binding settlement agreement.

In his Response to Coldwell Banker's Motion to Enforce the Settlement Agreement, Defendant Centanne does not deny that (1) the parties negotiated a settlement on July 29, 2010; (2) Defendant Centanne contributed to the drafting of the Settlement Agreement; (3) Defendant Centanne executed the Settlement Agreement without duress; (4) the terms of the Settlement Agreement are unambiguous; and (5) the intent of the parties is definite and clear. Instead, Centanne contends that the Settlement Agreement is not enforceable because (1) the agreement was "never signed by the Plaintiff," (2) Defendants "never agreed that Stanmeyer Realtors, Inc. should be part of the settlement agreement," and (3) Coldwell Banker breached the settlement agreement by providing Plaintiff with a check for $165.00 which he could not cash.

Defendant Centanne first contends that the Settlement Agreement is unenforceable because it was "never signed by the Plaintiff." However, the settlement agreement includes the signature of Ryan T. Brown, counsel for Coldwell Banker and its representative in negotiating the settlement. Under basic principles of agency, that approval was sufficient and bound Coldwell Banker. See *Todd, Jr. v. Kohl's Dept. Store*, 2010 WL 3720265, at *4 (N.D. Ill. Sept. 15, 2010); see also *Knisley v. City of Jacksonville,* 497 N.E.2d 883 (Ill. App. Ct. 4th Dist. 1986); *In re Marriage of Clarke,* 550 N.E.2d 1220 (Ill. App. Ct. 1st Dist. 1990) (attorney's statements may bind

the client to a settlement agreement even when the client later claims to have misunderstood the terms of the settlement). Furthermore, Defendant Centanne does not contest the validity of his own signatures on the agreement. Defendant Centanne signed the document twice – both as a representative of "Coldwell Banker Stanmeyer Realtors" and "Individually." And finally, both Plaintiff, through its counsel, and Defendant Centanne (in person), orally represented to the Court on July 29, 2010, that a settlement agreement had been reached. See *Dillard*, 483 F.3d at 507 (noting that "[o]ral settlement agreements are enforceable under Illinois law if 'there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement'").

Defendant Centanne next argues that the Stanmeyer Realtors, Inc. should not be part of the settlement agreement. Even if this assertion is true, such an argument would not invalidate the contract between Centanne and Coldwell Banker. And regardless of any specific reference to "Stanmeyer Realtors, Inc." in the agreement, Stanmeyer Realtors, Inc. is "part of" the settlement agreement. Section 2 of the Settlement Agreement addresses Defendants – "Coldwell Banker Stanmeyer Realtors, Stanmeyer Realtors, [and] Centanne" – and their "agents, servants, employees, heirs, executors, administrators, assigns, subsidiaries, and related corporate entities * * *." Coldwell Banker Stanmeyer Realtors, Inc. (now known as Centannian Lift Technology Inc.) and Stanmeyer Realtors, Inc. are related corporate entities which Centanne owns. In any event, as previously indicated, Centanne signed the agreement twice – not only on behalf of himself "Individually," but also on behalf of "Coldwell Banker Stanmeyer Realtors." As the purported owner of this corporate entity, Centanne had the power to sign the settlement agreement on its behalf. The fact that Centanne could not advance the corporate entity's interests in court papers is independent of his ability, as a principal, to represent the corporation's interests in settlement discussions and agreements.

In furtherance of the settlement agreement and injunctive relief agreed to by Defendants, Centanne removed the "Coldwell Banker" awning at 2034-6 West Montrose in Chicago, Illinois. Plaintiff's counsel subsequently agreed to reimburse Defendant Centanne $165.00 for his costs in removing the awning. A check for $165.00 was prepared and executed by an authorized representative of Gordon & Rees LLP, and the check was delivered to Centanne on August 24, 2010. On or about August 26, 2010, counsel for Coldwell Banker received a call from Defendant Centanne wherein Centanne recounted his attempts to "cash" the check at several Chicagoland banks and the resulting altercation with certain bank personnel (which led to the involvement of the Chicago Police Department). Centanne demanded payment of $465.00 in cash for his alleged inconvenience, and he threatened to file a criminal complaint against Plaintiff's counsel for issuing a "bad" check. Counsel for Coldwell Banker responded to Centanne by confirming that he had a "good" check that could be deposited into his checking account. Plaintiff has heard nothing further from Defendant Centanne about the check.

Defendant Centanne contends that Coldwell Banker breached the settlement agreement by providing him with a check for $165.00 that he could not cash. However, the Settlement Agreement does not contemplate any payment by Coldwell Banker to Centanne, nor does it include a provision addressing the timing or form of payment from Coldwell Banker to Defendant Centanne. Accordingly, it is irrelevant to the validity and enforceability of the Settlement Agreement. Even if it was relevant to the parties' settlement, Centanne's recourse would be a claim for breach of the settlement agreement, not a claim that the settlement agreement does not exist.

### III.     Conclusion

For these reasons, the Court grants Plaintiff's motion to enforce settlement agreement [31]. At this time, the Court declines to sanction Defendant Centanne for the costs incurred by Plaintiff in bringing the present motion, but cautions Defendant Centanne that further attempts to invalidate the binding settlement agreement entered into by Centanne on July 29, 2010, may result in sanctions. The Court will enter the parties' proposed order for

| **STATEMENT** |
|---|
| injunctive relief by separate minute entry. |